IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


MELVIN LOCKETT,

                              Plaintiff,

             v.                          CASE NO. 05-3209-SAC

JOSEPH NEUBAUER, et al.,

                              Defendants.


**MEMORANDUM AND ORDER**

     This is a civil rights complaint, 42 U.S.C. 1983, filed
by an inmate of the El Dorado Correctional Facility, El Dorado,
Kansas (EDCF).  Plaintiff proceeds in forma pauperis[1].  Because
plaintiff is a prisoner, the court is required to screen and to
dismiss the complaint or any portion thereof that is frivolous,
fails to state a claim on which relief may be granted, or seeks
monetary relief from a defendant immune from such relief.  28
U.S.C. 1915A(a) and (b).


**CLAIMS**

          Plaintiff sues numerous defendants including the Kansas

---

[1]

     Plaintiff is again advised he remains obligated to pay the balance of the statutory filing fee of $250.00 in this action through payments from his inmate trust fund account as authorized by 28 U.S.C. 1915(b)(2).  The Finance Office of the facility where he is incarcerated has been directed to collect from plaintiff's account and pay to the clerk of the court twenty percent (20%) of the prior month's income each time the amount in plaintiff's account exceeds ten dollars ($10.00) until the filing fee has been paid in full.

Department of Corrections (KDOC), the Kansas Secretary of Corrections (SOC), the Warden at EDCF, and Aramark Correctional Services, Inc., (hereinafter Aramark). Plaintiff complains that he and other inmates working for Aramark are receiving 40 to 60 cents per hour rather than minimum wage. He asserts Aramark is required by the Fair Labor Standards Act, 29 U.S.C. 201, et seq. (FLSA), to pay minimum wage. He alleges either Aramark pays less than required by the FLSA, or pays the proper amount to "revolving fund of KDOC/EDCF" who has then "distributed less than FLSA requires" to the inmate workers. He also claims defendants have "fixed the books" to show minimum wages are paid to inmates, he has not consented to the "keeping" of his minimum wage pay, and he is being subjected to slave labor in violation of the 13th Amendment. Plaintiff asserts defendants' denial of minimum wage is without due process and in violation of the equal protection clause. In addition to the FLSA, he cites Kansas regulations, civil rights statutes and constitutional provisions as legal authority for his claim.

As factual support, plaintiff alleges he began working for Aramark on September 11, 2002. He states that Aramark contracts with KDOC and EDCF. He also states that in 2004 his Aramark supervisor told him Aramark pays minimum wage to the EDCF/KDOC, who then pay "prison wages" to inmates. Plaintiff argues his prison employment is within the purview of the FLSA

because his employment records are maintained by and in the sole possession of Aramark.   He further alleges Aramark has "exclusive power" to select, hire, fire, and supervise inmates; controls schedules, duties and conditions of employment; and determines rates and method of pay.   He seeks declaratory, injunctive, and monetary relief including back pay with interest.


## DISCUSSION

Since plaintiff's complaint was filed pro se, it has been held "to less stringent standards than formal pleadings drafted by lawyers."   Haines v. Kerner, 404 U.S. 519, 520 (1972). Nevertheless, a pro se complaint, like any other, must present a claim upon which relief can be granted by the court.   Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991).   For purposes of this 1915A screening, the court has accepted as true allegations of fact set forth in plaintiff's complaint.


## STATE DEFENDANTS

Upon initial examination of the complaint, the court found it subject to dismissal.   Defendants EDCF and the KDOC are clearly subject to being dismissed for the reason that neither the KDOC nor the prison facility is a "person" subject to suit under Section 1983.   See Will v. Mich. Dep't of State Police,

491 U.S. 58, 66, 71 (1989)(neither state nor state agency is a "person" which can be sued under Section 1983); <u>Davis v. Bruce</u>, 215 F.R.D. 612, 618 (D. Kan. 2003), *aff'd in relevant part*, 129 Fed.Appx. 406, 408 (10th Cir. 2005). Plaintiff argues in his Response that "the KDOC are persons under § 1983 for prospective and injunctive relief, for violations of federally protected rights of liberty interest in moneys they unlawfully withheld by fraud." This assertion is legally incorrect. A state or state agency is not a "person" that Congress made amenable to suit in § 1983. <u>Will</u>, 491 U.S. at 64. <u>Ex parte Young</u>, 209 U.S. 123 (1908), cited by plaintiff, has no application in suits against the States and their agencies, which are barred, absent consent, regardless of the relief sought. <u>Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.</u>, 506 U.S. 139, 145 (1993); <u>Cory v. White</u>, 457 U.S. 85, 90-91 (1982). Consequently, the court dismisses plaintiff's claims against defendants EDCF and KDOC.

**INDIVIDUAL DEFENDANTS**

Plaintiff has sued the named, individual defendants in their official and individual capacities. The Eleventh Amendment immunizes state officials from suit for money damages in their official capacities, because such suits are, in essence, suits against the state. <u>Hafer v. Melo</u>, 502 U.S. 21,

30-31 (1991); <u>Hunt v. Bennett</u>, 17 F.3d 1263, 1267 (10th Cir.),
<u>cert</u>. <u>denied</u>, 513 U.S. 832 (1994).   Accordingly, the court
dismisses plaintiff's money damages claims against the
individual state-employed defendants to the extent they are sued
in their official capacities.   The Eleventh Amendment does not
prevent suits against individual defendants in their official
capacity for injunctive or declaratory relief, or against state
officials in their individual capacities, or against private
entities.   <u>See</u> <u>Will</u>, 491 U.S. at 71, FN10.


**FLSA CLAIM**

         The claims raised in the complaint are also subject to
being dismissed as against all defendants in either capacity for
failure to state a claim.   Plaintiff was previously advised
that his claims are substantially similar to those determined in
this district in <u>Moore v. McKee</u>, 2003 WL 22466160 (D. Kan.,
Sept. 5, 2003, unpublished)(copy attached to show cause order).
The plaintiff in <u>Moore</u>, a state prisoner, brought suit against
two officers of Aramark, "the corporation which provides food
services at the prison," alleging they violated the FLSA,
"breached a contract, and violated his constitutional rights by
failing to pay him minimum wage for his services."   On
defendants' motion to dismiss, the district court accepted
plaintiff's allegations that Aramark had contracted with KDOC to

pay no less than minimum wage but to pay such wages to KDOC and not the individual inmates, and that plaintiff was being paid less than minimum wage. The court granted defendants' motion, holding that "plaintiff cannot maintain such a claim because inmates are not 'employees' under the FLSA." Id. at *2, *citing* see Franks v. Okla. State Indust., 7 F.3d 971, 972-73 (10th Cir. 1994); *and* Williams v. Meese, 926 F.2d 994, 997 (10th Cir. 1991)(inmate not employee under Title VII or ADEA because his relationship with Bureau of Prisons arises out of status as inmate, not an employee). Plaintiff was granted time to show cause why this action should not be dismissed for the reasons stated in Moore and this court's show cause order. He has filed Plaintiff's Response to Show Cause (Doc. 8). Having considered all the materials filed, the court finds as follows.

Plaintiff's claim that he is entitled to relief under the Fair Labor Standards Act is legally frivolous. The FLSA provides that "[e]very employer shall pay to each of his employees . . . not less than" minimum wage. See 29 U.S.C. § 206(a)(1). The Act defines "employee" as "any individual employed by an employer." 29 U.S.C. § 203(e)(1). The term "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency." Id., § 203(d). The term "employ" means "to suffer or permit to work." Id., § 203(g). Over time

6

Congress has exempted specified classes of workers from FLSA's coverage and broadened coverage of others.  Prisoner laborers have never been on the exempted or covered lists.

Plaintiff argues he is an employee as defined in the FLSA, and reasons that prisoners are not among the workers expressly exempted by the statute.  The plain language of the statute is too general to be helpful in this case.  Neither Congress nor the United States Supreme Court has declared whether prisoner workers are covered by FLSA.  Most federal district and appellate courts deciding similar cases have held the FLSA does not apply to prisoner laborers.  See Franks, 7 F.3d at 973; Miller v. Dukakis, 961 F.2d 7, 8 (1st Cir.), cert denied, 506 U.S. 1024 (1992)(courts have uniformly denied FLSA and state minimum wage law coverage to convicts who work for the prisons in which they are inmates); Danneskjold v. Hausrath, 82 F.3d 37, 39 (2nd Cir. 1996)(FLSA does not apply to prison inmates whose labor provides services to the prison, whether the work is voluntary or not, whether it is performed inside or outside the prison, and whether or not a private contractor is involved); Tourscher v. McCullough, 184 F.3d 236, 243 (3rd Cir. 1999)(prisoners who perform intra prison work are not entitled to minimum wages under the FLSA); Harker v. State Use Indus., 990 F.2d 131 (4th Cir.), cert. denied, 510 U.S. 886 (1993)(FLSA does not apply to prison inmates performing work at prison

workshop within the penal facility as part of rehabilitative program); Reimoneng v.Foti, 72 F.3d 472, 475 (5th Cir. 1996)(inmate who participates in work-release program has no claim against government under FLSA simply because he is permitted to work for private employer); Sims v. Parke Davis & Co., 453 F.2d 1259 (6th Cir.), cert. denied, 405 U.S. 978 (1971)(inmates working at private drug clinic inside prison not covered by FLSA); Vanskike v. Peters, 974 F.2d 806, 807-08 (7th Cir. 1992), and cases cited therein, cert. denied, 507 U.S. 928 (1993); McMaster v. Minn., 30 F.3d 976, 980 (8th Cir. 1994); Gilbreath v. Cutter Biological, Inc., 931 F.2d 1320 (9th Cir. 1991)(inmates not entitled to minimum wage for labor performed for treatment center located in prison pursuant to contract between center and State DOC); Villarreal v. Woodham, 113 F.3d 202, 207 (11th Cir. 1997)(pretrial detainee performing labor for benefit of the correctional facility and inmates not entitled to minimum wage protection of FLSA); Henthorn v. Department of Navy, 29 F.3d 682, 688 (D.C. Cir. 1994)(allegations that prisoner was assigned to work at a Naval Air Station and that BOP set his rate of pay and actually paid him fail to state claim under FLSA). Cases holding that prisoner laborers were not "employees" under FLSA have generally involved inmates working within the prison for prison authorities or for private employers. See e.g., Franks, 7 F.3d at 973 (FLSA does not apply

to prisoners working inside prison); <u>Vanskike</u>, 974 F.2d at 808 (prisoner assigned to "forced labor" within prison is not "employee" under FLSA).   Most courts opined in dicta that prisoners are not categorically always barred from being "employees" covered by FLSA.

The rare cases where courts found the FLSA covered inmate labor involved prisoners working outside the prison directly for private employers.  <u>See</u> <u>Watson v. Graves</u>, 909 F.2d 1549, 1553-54 (5th Cir. 1990)(prisoners required to work for private construction company outside the prison to provide jailer's relative with commercial advantage were "employees" of company governed by FLSA); <u>Carter v. Dutchess Community College</u>, 735 F.2d 8, 13-14 (2d Cir. 1984)(prisoner working as a teaching assistant at community college which paid him wages directly could be FLSA "employee").  Plaintiff cites these two cases as authority for his claims.   However, their facts are distinguishable from plaintiff's case[2] in that he is not working outside the prison, or directly employed by a private enterprise.  Moreover, the rationales in these two cases are not as persuasive and have been called into question by later

---

[2]

Plaintiff's exhibit of the Warden's response to his administrative grievance at EDCF provides in relevant part:

Employment in food service as a job assignment in this correctional facility does not constitute private prison based employment. . . .

As a food service worker you were given a work assignment.  That work assignment and compensation are governed by IMPP 10-109 (Inmate Work Assignments).

opinions in the Second, Fifth and other Circuits.

The reasoning in cases finding prisoner laborers not covered by FLSA is much more persuasive. First, the Thirteenth Amendment excludes convicted criminals from its prohibition of involuntary servitude, so prisoners may be required to work without any compensation. Vanskike, 974 F.2d at 809. Since there is no federal constitutional right to compensation for prisoner labor; pay is "by the grace of the state." Id. Second, the relationship between the KDOC and "a prisoner is far different from a traditional employer-employee relationship." Id. It is clear from Kansas law that the KDOC retains ultimate control over its prisoners in work release programs. The KDOC's "control" over plaintiff is far greater than an employer's and "does not stem from any remunerative relationship or bargained-for exchange of labor for consideration, but from incarceration itself." Id. at 809-10 (When prisoners "are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees."). In short, plaintiff is not in a true economic employer-employee relationship with Aramark or the KDOC, so the FLSA does not cover him. Id. at 812.

Plaintiff contends the four factors of the economic reality test must be applied to determine his claims, and cites Watson and Carter. Under the Ninth Circuit test, a court

10

inquired: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." <u>Bonette v. California Health & Welfare Agency</u>, 704 F.2d 1465, 1470 (9th Cir. 1983)(no longer good law). However, even those courts applying the economic reality test have generally held prisoners are not "employees" entitled to minimum wage under the FLSA. <u>See</u> <u>e.g.</u>, <u>Hale v. Arizona</u>, 993 F.2d 1387 (9th Cir.) (en banc), <u>cert</u>. <u>denied</u>, 510 U.S. 946 (1993); <u>Vanskike</u>, 974 F.2d at 806; <u>Miller</u>, 961 F.2d at 7.  More significantly, this district and the Tenth Circuit Court of Appeals have held that the <u>Bonnette</u> economic test does not apply to prisoners.  <u>Franks</u>, 7 F.3d at 973; <u>see</u> <u>Rhodes v. Schaefer</u>, 2002 WL 826471 (D. Kan. March 20, 2002, unpublished)(copy attached).  As the Seventh and Ninth Circuits reasoned, the traditional factors of the "economic reality" test "fail to capture the true nature of [most prison employment] relationship[s], for essentially they presuppose a free labor situation." <u>Vanskike</u>, 974 F.2d at 809; <u>see</u> <u>Hale</u>, 993 F.3d at 1394 (quoting <u>Vanskike</u>).  The Seventh Circuit explained:

> Prisoners are essentially taken out of the national economy upon incarceration.  When they are assigned work within the prison for purposes of training and rehabilitation, they have not contracted with the government to become its employees. . . .

Vanskike, 974 F.2d at 810.  The Ninth Circuit further explained
in Hale:

> [t]he case of inmate labor is different from
> [the] type of situation where labor is exchanged
> for wages in a free market.  Convicted criminals
> do not have the right freely to sell their labor
> and are not protected by the Thirteenth
> Amendment against involuntary servitude.

Hale, 993 F.2d at 1394; Vanskike, 974 F.2d at 809 (Thirteenth
Amendment's specific exclusion of prisoner labor supports idea
that a prisoner performing required work for the prison is
actually engaged in involuntary servitude, not employment).

This court agrees with the majority of courts that the
"policies underlying the FLSA . . . have limited application in
the separate world of prison." Vanskike, 974 F.2d at 810.
Requiring the payment of minimum wage for a prisoner's work in
prison would not further the fundamental goal of the FLSA to
ensure workers' welfare and standard of living since a prison
inmate's basic needs are met irrespective of inability to pay.
The second purpose of the Act - to prevent unfair competition -
is protected by other statutes, regulations and contract
provisions.  For example, with respect to prison-made goods, the
Ashurst-Sumners Act, 18 U.S.C. §§ 1761-62, penalizes their
transportation in commerce.  However, governments are rationally
permitted to use the fruits of prisoner labor.  Plaintiff does
not make goods distributed outside the prison, but is assigned
to work in food service at the prison.  Plaintiff is not subject

to FLSA simply because non-inmates could be hired to do his job.

## DUE PROCESS RIGHT CREATED BY STATE LAW

Plaintiff also claims Kansas law and regulations have created a liberty interest in minimum wages protected by Due Process.   In particular, he cites K.A.R. 44-7-108.   This administrative regulation provides in pertinent part:

> . . . inmates having minimum or medium security classification may work at paid employment for a private industry or other business approved by the Secretary.  The program shall be referred to as nonprison employment.  The program shall be distinct from any program of employment of inmates by private business which is leasing space on the premises of the correctional facility.  No inmate shall be engaged in the nonprison employment program unless minimum wage is paid.  Minimum wage shall be state minimum wage unless federal contracts are involved. . . .

Id.  The court is presented with no facts indicating this regulation applies to plaintiff's work for Aramark.  Plaintiff's own allegations indicate Aramark is managing food service operations within the prison.   There are no facts alleged suggesting it is the "Private non-prison employment" expressly covered[3] by this regulation.  Instead, if it is private industry employment it is prison based, which is explicitly excluded from

---

[3] Even if this regulation were held to cover plaintiff's work with Aramark, it requires payment of minimum wage but not directly to the inmate.  By plaintiff's own allegations, Aramark is apparently paying minimum wage to KDOC/EDCF.

this regulation's coverage.   The court concludes no liberty
interest is created by this regulation.

Plaintiff complains in his Response that defendants are
not complying with K.A.R. 44-7-108, which he alleges requires
that Aramark be treated as an independent contractor and not as
an agent or employee of the State of Kansas.   This court finds
no such requirement in the cited regulation.   Nor does plaintiff
allege any facts indicating Aramark is being treated other than
in accordance with the policy statements, regulations and state
statutes governing prison based employment and/or work release
programs.   In any event, a violation of a state regulation is
not grounds for a civil rights complaint.

Plaintiff alleges Aramark has paid the minimum wage, but
officials at EDCF and KDOC have withheld most of that money.   He
claims KDOC and its agents and employees are "required by law"
to deposit all the moneys earned at the prevailing local minimum
wage in the inmate trust accounts.   However, he does not allege
facts indicating that his work for Aramark is direct,
independent employment or specify language in any law which so
requires.

Plaintiff suggests that provisions of IMPP 10-109 and
IMPP 10-128 support his claims, but does not explain how.   He
does not cite any particular provision in IMPP 10-109.   This
policy statement governs "work assignments" at the prison and

provides that inmates "shall be assigned to jobs in the facilities." It states work assignments are designed to occupy inmates' time in a productive manner and to provide opportunities to develop vocational skills and work habits. Performance is evaluated and considered an indicator of progress on the inmate's program plan. "Facility support" is defined as "assignments in which inmates are engaged in operational support activities, e.g., food service . . . ." The warden is to ensure the development of a "facility work plan." The plan is to provide for an adequate number of positions to meet the workload needs of the facility's operational activities, private employment ventures, and community work projects. "Work assignment" is defined as the "job or program activity assigned to an inmate by the unit team as necessary to meet the needs of the facility work plan or to satisfy the elements of the Inmate Program Agreement." Under this policy statement, the warden "shall promulgate a general order specifying procedures for assignment of inmates to work/program activities." The "unit team shall be responsible for all work assignments." Any inmate may be moved from one job classification to another "based upon the unit team's recommendation and judgment of the inmate's performance," following consultation with the supervisor. "Removal of an inmate from a work assignment shall be the responsibility of the unit team." The "responsibility for all

15

work assignments and jobs/activities assigned to all inmates shall rest with each inmate's unit team." The unit team is to attempt to match the abilities of the inmate to the required tasks of a work assignment.

Inmates "shall be compensated for participation in work assignments." Each work assignment is classified by skill level, and inmates receive "incentive pay" for days worked on assignments commensurate with their level. Pay rates vary from $.45 to $1.05 daily. Kansas Correctional Industries (KCI) pay rates are set at $.25 to $.60 per hour. Inmates "working directly for a private industry . . . shall be paid" minimum wage or the local prevailing wage.

IMPP 10-109 supports the warden's response that plaintiff's labor for Aramark is a "work assignment," rather than plaintiff's claims that he is an "employee" under the FLSA. It also indicates the Unit Team has considerable control over work assignments and provides incentive pay and KCI pay rates for inmates that are far less than federal minimum wage.

Plaintiff claims IMPP 10-128 "contradicts" the warden's response to his administrative grievance. IMPP 10-128, pertinently provides that KDOC:

> supports and encourages the utilization of private industry to supplement traditional inmate work opportunities," and that private industry work programs may be established to provide inmate employment opportunities to learn job skills and develop good work habits and

16

> attitudes that inmates can apply to jobs after
> they are released.

It further provides:

> whether operating in a community setting or on
> the grounds of a correctional facility, private
> industry employment programs shall be considered
> work release in accordance with K.A.R. 44-8-115
> or 44-8-116[4].

"Private Industry Employment Program" is defined as "the term used to refer generally and collectively to private prison based and private non-prison based employment programs." "Private Prison Based Employment" is defined as "Inmate employment for a private industry, which operates on the grounds of a correctional facility pursuant to K.A.R. 44-8-116." IMPP 10-128 also provides that procedures for implementing private industry employment programs include "agreements between private companies and the Department of Corrections for the employment of inmates." It states the "agreement shall provide that the Balance of State Average Lowest Tenth Percentile Wage as reported by the Kansas Department of Human Resources for similar types of work shall be the minimum amount paid to private industry inmate employees . . . ." The agreement also allows "for wages paid by the private industry to be placed into the trust account of the inmate employee." A formal agreement

---

[4]

K.A.R. 44-8-116 provides that private prison based employment is work release: "Private enterprises which operate on the grounds of a correctional institution and employ inmates shall be work release programs."

between the private industry and the KDOC is required for operation of a private prison-based employment program. Included in negotiations on the agreement are the private company, the warden of the host facility, and the Deputy Director of KCI. Subsection IV(A) provides, "Participation of inmates in private industry employment programs shall be pursuant to K.A.R. 44-8-114[5] through K.A.R. 44-8-116 and procedures established by IMPP 15-101." Thus, this policy statement defines employment with a private industry as a work release program. It does not create any right for plaintiff to receive minimum wage, even if paid to KDOC by the private entity. It does not contradict the warden's statement that plaintiff's job is a "work assignment" rather than private employment.

In his Response, plaintiff also cites K.S.A. 44-1001, the Kansas Act Against Discrimination. This statute provides no authority for the relief plaintiff seeks. Furthermore, plaintiff does not show he has exhausted administrative remedies as required under the Act. See Rhodes, at *5.

Instead of supporting plaintiff's claims, Kansas law casts considerable doubt on his claims as to the nature of his work for Aramark and that he is legally entitled to wages, which

---

[5]

K.A.R. 44-8-110 through -114 were revoked on March 22, 2002. K.A.R. 44-8-115 deals with non prison based employment only.

18

are being taken without due process.   See Ellibee v. Simmons, 2005 WL 1863244 (D.Kan. Aug. 4, 2005, unpublished) and cases cited therein (copy attached).   K.A.R. 44-8-101 defines "employer" as "those persons, businesses, private interests, or corporations acting as agents of the secretary of corrections by providing paid employment to work release participants." "Staff" includes those persons employed by an agent having a contract with the secretary of corrections, who are authorized to directly supervise and exercise legal authority over work release participants."   K.A.R. 44-8-102 provides that in the work release program, a per diem rate established by the secretary of corrections for each day in the program shall be charged to the participants for food and lodging, and this money shall be returned to the funding source for participants of state operated facilities or paid to the correctional facilities in which the participant is housed.   K.A.R. 44-8-104 provides that a written work release agreement shall be executed between the SOC and the participant, which provides for the disbursement of the participant's earnings.   "A written agreement shall" also "be executed between the secretary of corrections and the employer" which will provide: information to the employer about the work release program and regulations, the rate of compensation and pay period interval, and the participant's regular work schedule.   The "work release plan agreements shall

19

be maintained as permanent records in the department of corrections' official file on the participant." K.S.A. 75-5210(h) provides any inmate participating in work release programs continues to be in the legal custody of the SOC, and "any employer" of that person "shall be considered the representative or agent for the secretary."

IMPP 15-101 provides the "selection criteria and placement procedures for the KDOC's work release programs, and states that private prison based/non-prison based employment shall be based upon the inmate's need for such a program and security considerations. Participation in work release "shall be voluntary." Participants may apply to the unit team and are recommended for participation. If an inmate is determined to be eligible for work release placement, the unit team forwards a form to the facility's "Program Management Committee" for approval or disapproval, which must then be signed by the warden and forwarded for consideration to the "Deputy Secretary of Facility Management." Participants must be informed of and agree to abide by all policies and procedures applicable to program participation. "Private enterprises which operate on the grounds of a correctional institution and employ inmates shall be work release programs." The Warden "shall maintain" in the inmate's file a permanent record of disbursement of the inmate's earnings, rate of compensation, and pay period

interval.   The Warden may terminate or suspend an inmate's participation in the work release program for reasons including lack of interest or motivation, inability to adjust or perform as required, conflict with co-workers or employer, inability to conform to the program structure, activities discrediting the work release program, and at the inmate's request.   "Work release program staff" are to document termination, through a review of the inmate's performance.   IMPP 15-101(VIII)(C) provides "A per diem rate of 25% shall be charged to the inmate for food and lodging" and "shall be paid to Kansas Correctional Industries (KCI)."

K.S.A. 75-5275(a) authorizes the secretary to purchase materials and employ supervisory personnel necessary to establish and maintain for the state at each correctional institution, industries for the utilization of services of inmates in providing products or services as may be needed for the operation, maintenance or use of any government agency or organization. K.S.A. 75-5288(b) provides, "Subject to approval by the secretary of corrections, any corporation . . . under this section may employ selected inmates of the correctional institution upon whose grounds it operates."   K.S.A. 75-5268 provides for the disposition of compensation paid to inmates in the work release and job training programs.   It specifies that "any inmate who is allowed to participate in such paid

employment . . . shall pay over to the secretary . . . all monies received, except that pursuant to rules and regulations adopted by the secretary . . . the inmate shall retain a stipulated reasonable amount of the money as the secretary . . . deems necessary for expenses connected with the employment . . . ."  The balance of the moneys paid to the secretary "shall be disbursed" for specified purposes including the inmate's food and lodging, support of dependents receiving public assistance, care of immediate family if reduced to judgment, costs assessed to inmate by clerk of court, orders of restitution, savings for disbursement to inmate upon release, and payment of "inmate's other obligations acknowledged by him in writing."   The "balance, if any, shall be credited to the inmate's account."  K.S.A. 75-5211(b) provides the SOC shall prescribe procedures for withdrawing amounts from the compensation paid to inmates from all sources for moneys of work release participants.  K.S.A. 75-5275 also provides: "If an inmate receives at least federal minimum wage pursuant to a contract authorized by this subsection, the provisions of K.S.A. 75-5211 and 75-5268 . . . for withdrawing amounts from the compensation paid to inmates shall apply."  It is evident that none of the relevant state laws creates a right for plaintiff to receive minimum wage for a prison work assignment.

        While it is not clear from plaintiff's complaint or

Response precisely what type of work release program his food service duties fall into, it is apparent no contract was negotiated or entered into directly between him and Aramark, and he is not engaged in non-prison based employment.  None of the regulations cited herein governing work release program assignments within KDOC prisons provides that the participating inmate is entitled to receive federal or state minimum wage for his labor in such programs.  Instead, either significant deductions are made from wages for various, specified purposes such as for food and board; or inmate incentive pay is limited to much less than minimum wage.  The court concludes that neither the regulations cited by plaintiff nor any other regulations or statutes reviewed by this court governing prison based work release programs create a liberty interest in plaintiff to federal or state minimum wage.  Plaintiff's claim that such a liberty interest has been created by state law is frivolous.


**FRIVOLOUS UNDER MOORE & FRANKS**

        Plaintiff has not alleged facts in response to the show cause order, which convince this court that his case is distinguishable from <u>Moore</u>.  He argues his case should be distinguished from <u>Moore</u> because the plaintiff in that case sued officers of Aramark and not the corporation.  However, officers

of the corporation are its agents and they were sued in their official capacity in <u>Moore</u>.  Plaintiff mentions the holding in <u>Moore</u> that "absent privity of contract, plaintiff could not maintain a breach of contract claim."  The lack of a breach of contract claim was not the sole basis for the <u>Moore</u> decision. The court also expressly held that neither the FLSA nor the United States Constitution conferred any rights for prisoners to receive certain wages.  <u>Moore</u>, 2003 WL at *2.  Plaintiff's case is not distinguishable from <u>Moore</u> simply because he appended the phrase "injunctive relief" to his money damages claim. Plaintiff also argues his case is distinguishable from <u>Moore</u> and <u>Franks</u> because the plaintiffs did not cite K.A.R. 44-7-108 and K.S.A. 44-1001 as authority.  As noted herein, these two citations do not support plaintiff's claims for relief.

    The Tenth Circuit Court of Appeals in <u>Franks</u> considered a complaint by state prisoners seeking declaratory, injunctive and monetary relief based on the failure of the Oklahoma State Industries, a division of the Oklahoma Department of Corrections, to pay minimum wage pursuant to the FLSA.  The Tenth Circuit found the complaint failed to state a claim upon which relief could be granted.  They reasoned that the inmate was not an "employee" within FLSA because his relationship with the defendants arose out of his status as an inmate, not an employee.  Since <u>Franks</u>, the Tenth Circuit has dismissed other

claims similar to plaintiff's as frivolous.   They cited <u>Franks</u> in dismissing an inmate's claim that he was denied minimum wage for working for a private entity on prison grounds, finding the FLSA "does not normally apply to prisoners."   <u>Phillip v. Mondragon</u>, 42 F.3d 1406 (10th Cir. 1994, Table)(copy attached). They found another prisoner's claims, that he was not paid minimum wage for work performed in prison and was subjected to involuntary servitude, were frivolous and failed to state a claim.   <u>Berry v. Oklahoma</u>, 64 Fed.Appx. 120, 2003 WL 1827802 (10th Cir. 2003, unpublished)(copy attached).

Plaintiff argues that neither <u>Moore</u> nor <u>Franks</u> dealt with an actual private industry.   He alleges Aramark is a private industry and not a part of Kansas Correctional Industries, which is not a private industry.   Plaintiff makes only conclusory statements regarding Aramark, its internal operations, and its alleged "exclusive power" over inmate workers.   He presents no facts and recites no contract provisions or regulations to support these self-serving allegations.   This court need not accept plaintiff's legal conclusions cast in the form of factual allegations, nor his inferences if they are unsupported by the facts set out in the complaint.   However, even if plaintiff's unsupported factual allegations are accepted as true, whether his prison based work is for a private industry or not is legally insignificant.   Contrary to plaintiff's conclusory

statements, statutes and regulations governing work release programs indicate the SOC, the unit team, and the program facilitators retain ultimate control of the inmates even when they are involved in private industry work programs.


**EQUAL PROTECTION CLAIM**

Plaintiff claims that singling out inmates to deny minimum wage violates equal protection. Plaintiff presents no legal basis for holding the class of all prison inmates is a protected class, and case law is to the contrary. Furthermore, he alleges no facts whatsoever to support a claim that he has been deprived of equal protection. Hall, 935 F.2d at 1110 (conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based).


**OTHER CLAIMS**

Plaintiff's allegations that one who complains about the failure to pay minimum wage will be retaliated against and fired, as well as that he will be punished with disciplinary action if he refuses to work for less than minimum wage are speculative and not supported by any facts. These claims asserted as First Amendment violations and plaintiff's assertion of a Fourth Amendment violation are completely conclusory and do not state a claim. Plaintiff's claim that the prison accountant

breached the contract between the KDOC/EDCF and Aramark is not supported by facts, and there is no legal authority for him to pursue a breach of contract claim on a contract to which he is neither a party nor a beneficiary.

For all the foregoing reasons, the court finds this complaint should be dismissed for failure to state a claim.

**IT IS THEREFORE BY THE COURT ORDERED** that is action is dismissed and all relief denied.

**IT IS SO ORDERED.**

Dated this 28th day of December, 2005, at Topeka, Kansas.


s/Sam A. Crow
U. S. Senior District Judge